IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **KATTI MIERAU** <br> 7630 Alta View Blvd. <br> Columbus, OH 43085 <br><br> Plaintiff, <br><br> v. <br><br> **FLINT RIDGE HEALTHCARE, LLC** <br> c/o Eric M. Simon, statutory agent <br> 200 Public Square, Suite 3500 <br> Cleveland, OH 44114 <br><br> Defendant. | : <br> : <br> : <br> : <br> : Case No. 2:21-cv-3899 <br> : <br> : Judge <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

## COMPLAINT

Now comes Plaintiff Katti Mierau f/k/a Katti Farmer (hereafter "Plaintiff"), by and through undersigned counsel, and for her Complaint against Defendant Flint Ridge Healthcare, LLC (hereafter "Defendant"), states and avers as follows:

### THE PARTIES

1. Plaintiff is a resident of the State of Ohio, County of Franklin. At all times alleged herein, Plaintiff was an employee of Defendant as the same has been defined by 29 U.S.C.S. §2611.

2. Defendant is a short and long-term healthcare and nursing facility, community action agency organized under the laws of the State of Ohio.

### JURISDICTION AND VENUE

3. Jurisdiction of this Court is invoked pursuant to 29 U.S.C.S. §§ 2611 *et seq.*, and 28 U.S.C. §1331.

4. The unlawful employment practices alleged below were committed within the State of Ohio, in the Southern District, Eastern Division of this Federal Court.

5. At all relevant times hereto, Plaintiff worked for Defendant in Licking County, Ohio, which is the county in which the Defendant conducted the activity that gave rise to Plaintiff's claim for relief, and the county in which all or part of Plaintiff's claim arose.

## FACTUAL ALLEGATIONS

6. Plaintiff incorporates her allegations set forth in paragraphs 1 through 5 above as if fully rewritten herein.

7. Plaintiff began employment with Defendant in May of 2019 as the facility administrator at Defendant's facility situated at 1450 W. Main St., Newark, OH 43055. In this position, Plaintiff was responsible for managing of all non-medical aspects of the facility's operations.

8. In 2020, Plaintiff became pregnant with her first child. The due date was December 18, 2020.

9. Because Plaintiff worked in a healthcare facility during the Covid-19 pandemic, Plaintiff's OB/GYN was sensitive the risks presented to Plaintiff and her unborn child by virtue of in-person work in a high-risk environment.

10. On October 28, 2020, Plaintiff was advised by her physician to begin working part-time at 25 hours a week because of concerns regarding her pregnancy. Plaintiff was also told by her physician of the possibility of needing to take full-time leave because of risk to the pregnancy presented by the Covid-19 pandemic. Plaintiff immediately advised her immediate supervisor, Monica Agee, of Plaintiff's physician's recommendations and Plaintiff submitted FMLA paperwork to her physician that same day.

11. Prior to October 28, 2020, Plaintiff had no discipline history while working for Defendant, despite unprecedented challenges to the industry presented by the Covid-19 pandemic.

12. On November 2, 2020, Monica Agee approached Plaintiff to discuss concerns with respect to Plaintiff's management of overhead costs related to patient care, particularly nursing staff. This was the first time Ms. Agee had ever expressed concerns about Plaintiff's job performance.

13. On or about November 3, 2020, Plaintiff became aware that she was exposed to an individual who had tested positive for Covid-19. Plaintiff communicated this to her physician, and the physician indicated that because of the risk of continued exposure to Covid-19 in the building and the possible impact on the pregnancy, that leave should begin immediately.

14. Plaintiff had yet to see the FMLA paperwork so did not know of the precise date that FMLA leave would begin, but Plaintiff advised Monica Agee that her leave would be starting imminently because of the risk of Covid-19 exposure.

15. The next day, November 4, 2020, Monica Agee and the Director of Operations, Bob Zimmer, met with Plaintiff to place her on a formal "performance improvement plan" or "PIP."

16. On November 5, 2020, Plaintiff's physician returned the FMLA paperwork which confirmed that FMLA leave was to begin effective as of November 4, 2020. Plaintiff promptly submitted the paperwork to Defendant.

17. Defendant approved Plaintiff's FMLA leave on November 6, 2020. Plaintiff's physician's best estimate on when Plaintiff would be able to return to work was March 12, 2021. Immediately upon approval, Plaintiff commenced her FMLA leave.

18. Plaintiff had periodic communications with representatives of Defendant regarding work matters, but there was no further discussion regarding the PIP.

19. On December 18, 2020 – Plaintiff's due date - Monica Agee contacted Plaintiff to

advise her that her employment was being terminated. Ms. Agee provided no meaningful information on the reasons for termination. Plaintiff subsequently received a document stating, without any substance or detail, that certain issues related to patient census and staffing expenditures had improved while Plaintiff was on leave.

20. Plaintiff went into labor and delivered her child later that day.

21. Because of Plaintiff's close friendships with her co-workers, Plaintiff was told by her former co-workers that the reasons given by Monica Agee for Plaintiff's termination were fabricated. Business conditions had either stayed the same or worsened during Plaintiff's approved FMLA leave.

22. Based on (1) Plaintiff being placed on the PIP after notifying Monica Agee of her need for leave and without ever having been notified of any job performance issues before Plaintiff had notified Monica Agee of her upcoming leave; (2) Plaintiff being terminated while she was on FMLA leave; and (3) the reasons offered by Monica Agee for Plaintiff's termination being empirically false, Defendant was directly and unlawfully terminated because of her use of approved leave under the FMLA.

## FIRST CAUSE OF ACTION – FMLA Retaliation

23. Plaintiff hereby incorporates her allegations set forth in Paragraphs 1 through 22 above as if fully rewritten herein.

24. At the time of Plaintiff's termination Plaintiff was on approved FMLA leave.

25. Defendant is an employer as defined by 29 U.S.C.S.§2611(4)(A).

26. After Plaintiff first notified her immediate supervisor of Plaintiff's intent to utilize FMLA leave, Defendant retaliated against Plaintiff by first placing her on a performance improvement plan and then terminating her for reasons that were fabricated.

27. Plaintiff was terminated due to her use of FMLA.

28. Defendant, by terminating Plaintiff, retaliated against Plaintiff for seeking FMLA leave and/or attempted enforcement of FMLA rights to which she was entitled.

29. As a direct and proximate result of Defendant's conduct set forth above, Plaintiff has suffered damages, including but not limited to emotional and physical distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, lost wages and income, and other benefits to which she was entitled, an amount to be determined at trial, plus liquidated damages, costs, and reasonable attorney's fees as provided for in 29 U.S.C. § 2617.

### SECOND CAUSE OF ACTION – Interference with FMLA

30. Plaintiff hereby incorporates her allegations set forth in Paragraphs 1 through 29 above as if fully rewritten herein.

31. Pursuant to 29 U.S.C. §2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

32. Defendant is a covered employer under the FMLA.

33. During her employment, Plaintiff was on approved qualified FMLA leave.

34. Without valid justification, Defendant terminated Plaintiff during her approved FMLA leave.

35. Defendant unlawfully interfered with Plaintiff's exercise of rights under the FMLA in violation of Section 105 of the FMLA and 29 CFR §825.220.

36. Defendant is an employer as defined by 29 U.S.C.S.§2611(4)(A).

37. As a direct and proximate result of Defendant's conduct set forth above, Plaintiff has suffered damages, including but not limited to emotional and physical distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, lost wages and income, and other

benefits to which she was entitled, an amount to be determined at trial, plus liquidated damages, costs, and reasonable attorney's fees as provided for in 29 U.S.C. § 2617.

## DEMAND FOR RELIEF

**WHEREFORE,** Plaintiff Katti Mierau prays for judgment against Defendant Flint Ridge Healthcare, LLC, as follows:

(i) On Counts I and II, an award against Defendant of compensatory, consequential, and punitive damages, in an amount in excess of $25,000 per claim as proven at trial;

(ii) An award of reasonable attorneys' fees and costs;

(iii) An award of such other relief as this Court may deem necessary and proper.

Respectfully Submitted,

*/s/ Daniel J. Bennett*
Daniel J. Bennett (0079932)
Bennett Law Group, LLC
81 Mill Street, Suite 300
Gahanna, OH 43230
Telephone: (614) 416-8147
Fax: (614) 416-8153
Email: dan@danbennettlaw.com
*Counsel for Plaintiff*

## JURY DEMAND

Now comes Plaintiff, by and through counsel, and hereby demands that a jury hear the above case.

*/s/ Daniel J. Bennett*
Daniel J. Bennett